**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

BETEIRO, LLC,

                    Plaintiff,

     v.

BETMGM, LLC,

                    Defendant.

No. 1:21-cv-20156

**OPINION**

---

<u>**APPEARANCES**</u>:

David A. Ward
KLUGER HEALEY, LLC
521 Newman Springs Road, Suite 23
Lincroft, NJ 07738

M. Scott Fuller, *pro hac vice*
Randall Garteiser, *pro hac vice*
GARTEISER HONEA, PLLC
119 W. Ferguson Street
Tyler, TX 75702

     *On behalf of Plaintiff.*

Theresa M. House
ARNOLD & PORTER KAYE SCHOLER, LLP
One Gateway Center, Suite 1025
Newark, NJ 07102

Evan Rothstein, *pro hac vice*
Patrick Hall, *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER, LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202

Philip Marsh, *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER, LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807

Michael Gershoni, *pro hac vice*
ARNOLD & PORTER KAYE SCHOLER, LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743

  *On behalf of Defendant.*

**O'HEARN, District Judge.**

  This matter comes before the Court on Defendant BetMGM LLC's ("Defendant" or "BetMGM") Motion to Dismiss, (ECF No. 9), the Amended Complaint filed by Plaintiff Beteiro, LLC ("Plaintiff"), (ECF No. 5).[1] The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion is **GRANTED**.

## I.  BACKGROUND

  Plaintiff is the owner—by way of a series of assignments starting with the sole named inventor, Raymond Anthony Joao—of four U.S. patents: (i) U.S. Patent No. 9,965,920 ("the '920 Patent"); (ii) U.S. Patent No. 10,043,341 ("the '341 Patent"); (iii) U.S. Patent No. 10,147,266 ("the

---

[1] The Court notes that this matter is one of several related cases brought by Plaintiff in this Court raising essentially the same patent infringement claims. *Beteiro, LLC v. DraftKings Inc.*, No. 21-20148 (D.N.J. filed Nov. 22, 2021); *Beteiro, LLC v. PointsBet USA, Inc.*, No. 21-20155 (D.N.J. filed Nov. 22, 2021); *Beteiro, LLC v. Hard Rock Tristate AC LLC*, No. 21-20157 (D.N.J. filed Nov. 22, 2021); *Beteiro, LLC v. Hillside N.J. LLC*, No. 21-20158 (D.N.J. filed Nov. 22, 2021); *Beteiro, LLC v. Betfair Interactive US LLC*, No. 22-00577 (D.N.J. filed Feb. 4, 2022); *Beteiro, LLC v. Kindred Grp. plc*, No. 22-01536 (D.N.J. filed Mar. 18, 2022). Plaintiff has also filed several related cases in the U.S. District Court for the Western District of Texas. *Beteiro, LLC v. Elys Game Tech. Corp.*, No. 21-01147 (W.D. Tex. filed Nov. 8, 2021); *Beteiro, LLC v. Kindred Grp. plc*, No. 21-01148 (W.D. Tex. filed Nov. 8, 2021); *Beteiro, LLC v. Morris Mohawk Gaming Grp.*, No. 21-01149 (W.D. Tex. filed Nov. 8, 2021); *Beteiro, LLC v. PlayUp Ltd.*, No. 21-01150 (W.D. Tex. filed Nov. 8, 2021); *Beteiro, LLC v. Flutter Ent. plc*, No. 21-01162 (W.D. Tex. filed Nov. 10, 2021). There may well be additional cases of which this Court is unaware.

'266 Patent"); and (iv) U.S. Patent No. 10,255,755 ("the '755 Patent" and collectively with the other patents, "the Patents-in-Suit").[2] (Am. Compl., ECF No. 5, ¶¶ 10–11). In general, the Patents-in-Suit describe an apparatus or method for facilitating—using computers or "communication device[s]"—remote or mobile gambling activity while abiding by local jurisdictions' laws with respect to such activity. '920 Patent, at [57]; '341 Patent, at [57]; '266 Patent, at [57]; '755 Patent, at [57].[3] The Patents-in-Suit are all part of the same family: each subsequent Patent is a continuation of the '920 Patent. '755 Patent, at [63]. Plaintiff alleges a priority date "at least as early as May 31, 2002." (Am. Compl., ECF No. 5, ¶ 16).

Plaintiff alleges that "[t]he claims of the [Patents-in-Suit] provide a basis for legally compliant remote wagering, increased accessibility to wagering platforms, increased opportunity for wagering providers, increased accessibility to wagering information to wagerers, reduced fraud, and more secure transactions among wagering providers and wagerers." (Am. Compl., ECF No. 5, ¶ 31). These alleged innovations purport to overcome deficiencies in the art as of the date of invention, "provid[ing] a technological solution to the technological problems arising in the online wagering context." (Am. Compl., ECF No. 5, ¶¶ 32–33). The inventions as claimed "provide a means by which interested parties can access gambling services remotely, while

---

[2] Although not attached to the Amended Complaint, (ECF No. 5), Defendant attached the Patents-in-Suit as Exhibits to the present Motion. (Exhs. 1–4, ECF No. 9-2). Plaintiff obviously explicitly relies on the Patents-in-Suit in asserting its infringement claims, which allows the Court to consider them here without converting the present Motion into one for summary judgment. *See, e.g.*, *Koninklijke Philips N.V. v. IdeaVillage Prods. Corp.*, No. 21-08706, 2021 WL 4438185, at *4 (D.N.J. Sept. 27, 2021) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993)). Moreover, as public documents generally known within this jurisdiction and not subject to reasonable dispute with respect to their or their source's accuracy, the Court may take judicial notice of the Patents-in-Suit in their entirety. *See id.* at *3; FED. R. EVID. 201.

[3] In the interest of clarity, this Opinion will refer to the Patents themselves rather than the Attachment filed by Defendant that compiles them, (ECF No. 9-2).

preserving geographic restrictions on such access," thus "making it possible to expose more individuals to the various gaming options available in the market." (Am. Compl., ECF No. 5, ¶¶ 32–34). "Wagering platform providers" can further "maximize the number of wagers made without a proportional increase in overhead, wagering equipment/terminals, or employee capacity." (Am. Compl., ECF No. 5, ¶ 35).

In the course of the prosecution of each of the '920 Patent, the '341 Patent, and the '266 Patent—though notably, not the '755 Patent—Plaintiff alleges that the Primary Patent Examiner Jasson Yoo ("the Patent Examiner") considered those Patents' eligibility under 35 U.S.C. § 101 and relevant Supreme Court precedent and found that they were patent-eligible.[4] (Am. Compl., ECF No. 5, ¶¶ 18–21). Upon examination, the Patent Examiner allowed the relevant claims of each of the Patents-in-Suit to issue. (Am. Compl., ECF No. 5, ¶¶ 41, 45, 49, 53).

Plaintiff alleges that Defendant "makes, sells, advertises, offers for sale, uses, or otherwise provides a plurality of gambling and event wagering services, including but not limited to providing and supporting its branded Mobile Wagering Platform, which is comprised of hardware (including servers) and software (including source code)." (Am. Compl., ECF No. 5, ¶ 57). According to Plaintiff, this "Mobile Wagering Platform" infringes upon each of the relevant claims of the Patents-in-Suit. (Am. Compl., ECF No. 5).

## II.  **PROCEDURAL HISTORY**

On November 22, 2021, Plaintiff initiated this action with the filing of its Complaint,

---

[4] As with the Patents-in-Suit themselves, *see supra* note 2, Plaintiff specifically relies upon the patent prosecution history of the Patents-in-Suit, but did not attach their Notices of Allowability to the Amended Complaint. (Am. Compl., ECF No. 5, ¶¶ 18–21). Defendant attached the Notice of Allowability for the '266 Patent to its Reply. (ECF No. 24-1). For the precisely the same reasons as the Patents-in-Suit themselves, the Court may consider this Notice and take judicial notice of all of them without converting Defendant's Motion into one for summary judgment under Rule 12(d). *See supra* note 2

alleging Defendant's direct and, upon service of the Complaint, willful infringement of the Patents-in-Suit.[5] (ECF No. 1). Plaintiff later amended its Complaint on January 1, 2021. (ECF No. 5).[6] After a stipulated extension of time, (ECF No. 7), Defendant filed the present Motion, seeking dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Alleged Patents are directed toward patent-ineligible subject matter under 35 U.S.C. § 101, (ECF No. 9). On March 3, 2022, this Court granted Plaintiff's request to set a briefing schedule for responding to this Motion and to similar motions filed in the related cases, *see supra* note 1. (ECF No. 13). Consistent with that schedule, Plaintiff filed its response on April 7, 2022, (ECF No. 23), to which Defendant replied, (ECF No. 24).

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* (citations omitted). Rather, a complaint must contain sufficient

---

[5] Specifically, Plaintiff alleges Defendant's infringement of Claim 13 of the '341 Patent, Claim 1 of the '266 Patent, Claim 2 of the '755 Patent, and Claim 16 of the '920. (Am. Compl., ECF No. 5, ¶¶ 78, 93, 106, 119). In the interest of space, the Court will not reproduce the full text of each of these Claims but incorporates their terms here by reference. '341 Patent cols. 96–97; '266 Patent cols. 94–95; '755 Patent col. 95; '920 Patent cols. 96–98.

[6] Plaintiff's original Complaint named two other Defendants: MGM Resorts International and Entain PLC. (ECF No. 1). These Defendants appear to have been voluntarily dismissed when Plaintiff amended the Complaint. (Am. Compl., ECF No. 5). Accordingly, this Opinion only analyzes Plaintiff's claims as against BetMGM.

factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *see also Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the [patent] claims and the patent specification." (quotation omitted)). The court may also consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion . . . if the plaintiff's claims are based on the document." *Pension Benefit*

*Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented and the court does not exclude them, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).

**B.  35 U.S.C. § 101**

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Despite this broad mandate, the Supreme Court has long recognized three categories of subject matter that are *not* patent-eligible under the statute: (i) laws of nature; (ii) natural phenomena; and (iii) abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 213 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

To determine whether the subject matter of a claim is patentable under § 101, courts employ a two-step inquiry. *Alice*, 573 U.S. at 217–18 (citing *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)). First, courts must determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If they are, courts must then consider the elements of the claims—"both individually and 'as an ordered combination'"—to determine whether they constitute an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original) (quoting *Mayo*, 566 U.S. at 72–73, 79).

The determination of whether a particular claim is patent-eligible is a question of law. *E.g.*, *Aftechmobile Inc. v. Salesforce.com, Inc.*, 853 F. App'x 669, 669 (Fed. Cir. 2021). As such, in patent infringement cases, questions of patent-eligibility are frequently resolved at the motion to

dismiss stage. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Of course, if the claims that make up a patent are not patent-eligible, the patent is invalid and a plaintiff-patentholder cannot state a claim for patent infringement. *See, e.g.*, *Open Parking, LLC v. ParkMe, Inc.*, No. 15-00976, 2016 WL 3547957, at *2 (W.D. Pa. June 30, 2016), *aff'd*, 683 F. App'x 932 (Fed. Cir. 2017).

## IV.   <u>DISCUSSION</u>

Defendant has moved for dismissal of Plaintiff's Amended Complaint, (ECF No. 5), under Rule 12(b)(6), arguing that Plaintiff cannot state a claim for patent infringement because the Patents-in-Suit are directed toward abstract ideas and are thus invalid under 35 U.S.C. § 101 and *Alice*, (ECF No. 9). Before conducting the *Alice* inquiry, the Court first considers whether Claim 2 of the '755 Patent is representative of each of the Patents-in-Suit. After determining that it is, the Court applies *Alice* to that Claim and concludes that the Asserted Patents are directed toward a patent-ineligible subject matter. Accordingly, for these reasons that follow, the Court grants Defendant's Motion.

### A.  Claim 2 of the '755 Patent Is Representative of the Patents-in-Suit.

In certain circumstances, courts may treat the claims contained in one patent as representative of claims across multiple patents for purposes of the patent-eligibility analysis under *Alice*. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018); *see also Fast 101 Pty Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 387–88 (D. Del. 2020) (analyzing one patent claim as representative of other patents' claims because they shared a common specification). Less clear, however, is the standard for determining whether a particular claim is representative of others. *Vroom Inc. v. Sidekick Tech., LLC*, 21-06737, 2022 WL 2314892, at *3 (D.N.J. June 28, 2022) (publication in the Federal Supplement forthcoming). "More specifically, it is not clear which party

bears the burden of establishing, or contesting, the representativeness of a certain claim or claims, and courts have articulated different approaches and considerations in making this determination." *Id.* (comparing cases).

Whether it bears the burden to do so or not, Defendant has made an affirmative case for treating Claim 2 of the '755 Patent as representative of the relevant claims of the other Patents-in-Suit. It argues that the claims at issue—Claim 2 of the '755 Patent, Claim 13 of the '341 Patent, Claim 1 of the '266 Patent, and Claim 16 of the '920 Patent—are "substantially similar" and are "linked" to the same idea. (Def.'s Br., ECF No. 9-1 at 14 (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014))). Looking to the Claims' language, it would be hard to disagree, as the following table supplied by Defendant demonstrates:

| '755 Patent, Claim 2 | wherein the global positioning device ***determines a position or location of the first communication device or the second communication device,*** ***determining, with or using the computer, whether the bet is allowed or disallowed using the information regarding the position or location*** of the first communication device or the second communication device |
| --- | --- |
| '341 Patent, Claim 13 | wherein the global positioning device ***determines a position or location of the first communication device or the second communication device***, wherein ***the computer determines if the bet is allowed or disallowed using the information regarding the position or location*** of the first communication device or the second communication device |
| '266 Patent, Claim 1 | wherein the global positioning device ***determines a position or location of the first communication device or the second communication device***, wherein the ***computer determines if the bet is allowed or disallowed using the information regarding the position or location*** of the first communication device or the second communication device |

| '920 Patent, Claim 16 | wherein the global positioning device ***determines a position or location of the first user communication device or the second user communication device***, <br> wherein the ***apparatus or the processor*** processes information contained in the bet message and ***determines whether the bet is allowed or disallowed*** |
|---|---|

(Def.'s Br., ECF No. 9-1 at 12–13 (quoting the relevant portions of the Patents-in-Suit)). Given the obvious parallelism, Defendant submits that the Court can streamline its analysis by focusing solely on Claim 2 of the '755 Patent, rather than repeating it four times over.

As for Plaintiff, it implicitly concedes the point. Save for a single paragraph on the penultimate page of its brief, (ECF No. 23 at 24), Plaintiff offers no argument against treating Claim 2 of the '755 Patent as representative of the Patents-in-Suit. This single paragraph identifies two other dependent claims in the '755 Patent that are distinguishable from Claim 2 and "bolster[] the unconventionality of the claimed solution as an ordered combination." (ECF No. 23 at 24). But what Plaintiff fails to identify is the *significance* of these distinctions to the Court's patentability analysis under *Alice*. Indeed, Plaintiff does not even attempt to distinguish Claim 2 from the related claims in the other Patents-in-Suit. And perhaps most fundamentally, Plaintiff has not pled that Defendant infringed the'755 Patent's other dependent claims. (Am. Compl., ECF No. 5, ¶¶ 103–15).

Given Plaintiff's position (or, really, its lack of one), one of the several claim-representativeness approaches endorsed by the Federal Circuit becomes particularly relevant: treating a claim as representative of others is appropriate when the patentee "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365; *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). Such is the case here.

10

In sum, Defendant argues persuasively that the Court can avoid quadrupling its patent-eligibility analysis by treating Claim 2 of the '755 Patent as representative of the relevant claims in the other Patents-in-Suit. Plaintiff presents no meaningful argument against this approach. Therefore, the Court will take the former course.

### B.  The Patents-in-Suit Are Directed Toward an Abstract Idea and Are Invalid.

Turning now to the two-step *Alice* analysis, the Court finds that because Claim 2 of the '755 Patent is (1) directed toward an abstract idea, and (2) its elements do not contain an "inventive concept" sufficient to "transform" that claimed abstract idea into a patent-eligible application, it and the related claims of Patents-in-Suit are invalid under 35 U.S.C. § 101. *Alice*, 573 U.S. at 222 (quoting *Mayo*, 566 U.S. at 72–73, 79).

#### 1.  *Alice* Step 1

At Step 1 of the *Alice* analysis, courts must determine "whether the claims at issue are directed to one of those patent-ineligible concepts," such as "abstract ideas." 573 U.S. at 218. While doing so, "claims are considered in their entirety," as the critical question is "whether *their character as a whole* is directed to excluded subject matter." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (emphasis added) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)). "Moreover, courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313 (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)). But while it is clear that courts are to consider claims holistically and avoid overgeneralizing, "[t]he Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

All the same, the Supreme Court and the Federal Circuit have identified certain categories of claims that are unpatentable abstract ideas, including "fundamental economic practice[s]" and "method[s] of organizing human activity." *Alice*, 573 U.S. at 220; *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (collecting examples of claims that fall within these categories). To determine whether a claim falls into one of these categories, courts have found it "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995 (Fed. Cir. 2016) (citation omitted). In cases of claimed technological innovations, the Federal Circuit has suggested that it can also be "useful" to consider analogies to the brick-and-mortar world. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016). In those cases, when the claims "simply recite conventional actions in a generic way" and "do not purport to improve any underlying technology," they are directed to an abstract idea. *Universal Secure Registry*, 10 F.4th at 1349 (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

As explained above, the Court will treat Claim 2 of the '755 Patent as representative of the relevant claims in the Patents-in-Suit. Claim 2 recites:

> 2. A computer-implemented method, comprising:
>
> detecting, with or using a computer which is specially programmed for processing information for providing for a placement of a bet on or regarding a gaming activity, a gambling activity, or a sporting event, a posting of information regarding the gaming activity, the gambling activity, or the sporting event;
>
> generating, with or using the computer, a notification message regarding the gaming activity, the gambling activity, or the sporting event;
>
> initiating, with or using the computer, a communication link with a first communication device and transmitting the notification message to the first communication device as an electronic transmission, or transmitting, from the computer, the notification message as an electronic mail message, wherein the electronic mail message is received by or received at a first communication device, wherein the first communication device is

associated with an individual;

receiving, with the computer, a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first communication device or the second communication device, and further wherein the bet message contains information regarding a bet to be placed on or regarding the gaming activity, the gambling activity, or the sporting event, and information regarding the position or location of the first communication device or the second communication device; and

determining, with or using the computer, whether the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, processing information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, processing information for disallowing the bet.

'755 Patent col. 95. As Defendant succinctly summarizes it, the Claim describes "an apparatus or method for exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." (Def.'s Br., ECF No. 9-1 at 18). It achieves this result through a simple series of steps:

(1) detecting information about a gambling activity; (2) generating and transmitting a notification message regarding the activity to a user; (3) receiving a bet message that includes information regarding a bet to be placed and the location of the user; (4) determining whether the bet is allowed or disallowed using the location information; and (5) processing information for placing the bet or disallowing the bet.

(ECF No. 9-1 at 18). When considered in these plain terms, comparisons of the Claim to past cases and to conventional brick-and-mortar business practices show that it is an unpatentable abstract idea.

Looking first to prior cases, several cited by Defendant confirm that Claim 2 describes an abstract idea. First, and perhaps most analogous, is the recent decision in *CG Technology Development, LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840 (D. Del. 2020). The U.S. District Court

for the District of Delaware held (and the Federal Circuit later affirmed, 858 F. App'x 363 (Fed. Cir. 2021)) that claims reciting steps for "(1) determining the location of a mobile gaming device; (2) using a lookup table to determine the game configuration associated with that location; and (3) implementing that game configuration" were "directed to the abstract idea of determining game configuration based on location." 442 F. Supp. 3d at 847–50 (quotations omitted). While here Claim 2 involves steps to determine whether to allow a game to be played rather than determine how to configure it, it is clear that it too is directed toward an abstract idea in much the same way: both involve "a method of organizing human activity." *Id.* at 847.

Other cases hold similarly. For example, the U.S. District Court for the District of Nevada recently found that an asserted patent claim directed to "incentivizing gambling tailored to a user's location" was an unpatentable abstract idea. *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 991–92 (D. Nev. 2021). Likewise, in *Front Row Technologies, LLC v. NBA Media Ventures, LLC*, the U.S. District Court for the District of New Mexico held that a claim directed to "authorizing handheld devices to receive streaming video based on a user's location" was also unpatentably abstract. 204 F. Supp. 3d 1190, 1268, 1273–74 (D.N.M. 2016), *aff'd sub nom.*, *Front Row Techs., LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017).

All of these cases and others—within and outside the gaming context—confirm that "the concept of taking action in response to location-based information . . . is abstract and patent-ineligible." (Def.'s Br., ECF No. 9-1 at 21–22 (collecting cases)). Being directed at just such a concept, Claim 2 is abstract and patent-ineligible as well.

Turning to brick-and-mortar analogies, this conclusion becomes even clearer. Gaming has been a highly-regulated industry for generations, and gaming rules have varied from jurisdiction to jurisdiction throughout that time. Those accepting bets have *always* had to confirm that the

bettor with whom they were dealing was located in a place where gambling was allowed. In perhaps the most colorful historical example cited by Defendants, the proprietors of the Stateline Hotel & Casino—which, as its name suggests, straddled the state line between Nevada and Utah— had to ensure patrons were on the Nevada side of the building (demarcated by a white line on the floor) before accepting a bet. Howard Hickson, *Wendover Will*, GREAT BASIN COLL., https://www.gbcnv.edu/howh/WendoverWill.html (last visited Sept. 6, 2022). Similarly, riverboat casinos have generally not been allowed to accept bets until they began their cruises. *See* Allan B. Solomon & Gregory D. Guida, *Riverboat Gaming: Legislation, Licensing, Site Selection, and Caselaw*, 29 J. MAR. L. & COM. 215, 217 (1998). And even today, Nevada bans "messenger betting," or betting via an in-person proxy—meaning those accepting bets in Nevada must ensure that the person truly placing a bet is located in the state. *See* NEV. GAM. REG. 22.060(5), https://gaming.nv.gov/modules/showdocument.aspx?documentid=18179 (last visited Sept. 6, 2020) ("No book or agent or employee of a book may accept a wager from a person who the book, agent, or employee knows or reasonably should know is a messenger bettor or is placing the wager in violation of state or federal law."). In short, verifying a prospective bettor's location-based eligibility is a long-established business practice of those who accept bets, and thus is a "fundamental economic practice," a "method of organizing human activity," and consequently, an unpatentable abstract idea. *Alice*, 573 U.S. at 220.

That the method and apparatus contemplated by Claim 2 uses computers to execute this conventional business practice does not change this analysis. As the Federal Circuit has recognized, "claims purporting to improve the functioning of the computer itself or improving an existing technological process might not succumb to the abstract idea exception," whereas those "for which computers are invoked merely as a tool" qualify as abstract ideas. *Enfish*, 822 F.3d at

1335–36 (quotations and alteration omitted) (quoting *Alice*, 573 U.S. at 223–25). Claim 2 falls in the latter camp. It does not purport to improve any computer or any existing technological process; instead, it seeks to use computers as tools to execute conventional business practices. This marks its direction toward an abstract idea.

Remote execution of these practices also fails to make the Claim any less abstract. "The fact that performance of the idea occurs remotely and/or over the Internet does not make the claimed subject matter non-abstract." *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-01771, 2015 WL 1387815, at *2 (D. Del. Mar. 25, 2015) (alterations omitted); *see also Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727 (N.D. Ill. 2016) (finding other patents asserted by the same inventor of the Patents-in-Suit ineligible abstract ideas), *reconsidered in part on other grounds*, No. 14-9852, 2017 WL 1151052 (N.D. Ill. Mar. 28, 2017).

Ultimately, Claim 2 describes a method that uses computers to execute a conventional business practice employed by those who accept bets for generations. As such, it is directed to a "fundamental economic practice" or a "method of organizing human activity." *Alice*, 573 U.S. at 220. This means it is directed to an abstract idea and, accordingly, it fails Step 1 of the *Alice* analysis.

### 2. *Alice* Step 2

Having found that Claim 2 is directed to an abstract idea, the Court must next consider whether "the claim elements, considered both individually and 'as an ordered combination,' include an 'inventive concept' sufficient to transform [the] abstract idea into a patent-eligible application." *Vroom*, 2022 WL 2314892, at *10 (quoting *Alice*, 573 U.S. at 217). "Transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (alterations omitted). Moreover, "the relevant inquiry

is not whether the claimed invention as a whole is unconventional or non-routine." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Rather, to survive Step 2, the claims must contain an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Vroom*, 2022 WL 2314892, at *10 (alterations omitted) (quoting *Alice*, 573 U.S. at 217). "Claim limitations that recite 'conventional, routine and well understood applications in the art' are insufficient to 'supply an inventive concept.'" *Id.* (quoting *BSG Tech LLC*, 899 F.3d at 1289). In the case of asserted technological innovations, "wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.'" *Alice*, 573 U.S. at 223–24 (alterations omitted) (quoting *Mayo*, 566 U.S. at 77). Unfortunately, that is precisely what Claim 2 is.

As noted above, Claim 2 describes a series of steps that can be summarized as follows:

(1) detecting information about a gambling activity; (2) generating and transmitting a notification message regarding the activity to a user; (3) receiving a bet message that includes information regarding a bet to be placed and the location of the user; (4) determining whether the bet is allowed or disallowed using the location information; and (5) processing information for placing the bet or disallowing the bet.

(Def.'s Br., ECF No. 9-1 at 18). These steps are achieved using several generic[7] computers—

---

[7]   Claim 2's suggestion that the computers used might be "specially programmed" does not make them any less generic. '755 Patent col. 95. The Claim contains no suggestion that any nonconventional computer must be used; rather, it contemplates a generic computer, programmed to execute specific receiving, transmitting, and processing functions—capabilities of virtually all computers. *Cf. Alice*, 573 U.S. at 226 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."). Although this may limit Claim 2 to a specific technological environment, that is "insufficient to transform [it] into [a] patent-eligible application[]." *See Elec. Power Grp.*, 830 F.3d at 1354. The same holds true for the generically-described "global positioning device." '755 Patent col. 95. Merely including a generic location-determination step performed by a computer does not constitute an inventive concept. *See, e.g., CG Tech.*, 442 F. Supp. 3d at 849.

namely, a "computer," a "communication link," a "first communication device," a "second communication device," and a "global positioning device." '755 Patent col. 95. This is the precise sort of "wholly generic computer implementation" and "apply it" claim that Step 2 of the *Alice* inquiry is meant to sus out. 573 U.S. at 221, 223–24. "[M]erely reciting an abstract idea performed on a set of generic computer components, as [Claim 2] does here, would 'not contain an inventive concept.'" *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)); *see also BSG Tech*, 899 F.3d at 1290–91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *In re TLI*, 823 F.3d at 615 (holding that claims do not contain an inventive concept where "the recited physical components behave exactly as expected according to their ordinary use"). Because Claim 2 simply describes a conventional business practice as explained above, although executed instead by generic computer components, it cannot survive Step 2.

   Plaintiff's reliance on *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), to suggest the contrary is unpersuasive. The Federal Circuit reversed the district court's finding at Step 2 of the *Alice* inquiry in that case because—in general terms—the claims at issue contemplated using conventional technology in unconventional ways, and the patentee plausibly and specifically alleged as much. *Id.* at 1316–17. Namely, the claims involved "separat[ing] the steps of capturing and publishing data so that each step would be performed by a different device," "require[d] establishing a paired connection between the mobile device and the data capture device before data is transmitted," and required the "use of HTTP, by an 'intermediary device' and while the data is 'in transit[.]'" *Id.* (quoting the patents at issue). This unique application of the

technology—and "the plausible and specific factual allegations" as to its unconventionality *at each step*—provided the necessary inventive concept to survive *Alice* scrutiny at least at the motion to dismiss stage. *Id.* Plaintiff's claims and allegations here lack any such specificity and detail. Instead, they describe conventional technology, conventionally applied, using "broad, functional language." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 534 (Fed. Cir. 2020). Indeed, to the extent Plaintiff alleges any unconventionality at all, it comes from the abstract idea identified at Step 1: the concept of determining bet-eligibility from location-based information using conventional computers. The Federal Circuit has squarely held that this is not sufficient. *Id.* ("[W]e have held that the abstract idea to which a claim is directed cannot supply the inventive concept[.]"). So, unlike the specific and detailed allegations that demonstrated an inventive concept in *Cellspin*, Plaintiff's generic, conventional claims here cannot survive the *Alice* analysis.

Finally, the Court also is not persuaded by Plaintiff's suggestion that it must defer to the determination of the Patent Examiner concerning patent eligibility under § 101.[8] To begin, "[a]n examiner's statements about a patent are not themselves evidence of the patent's validity." *Fitbit Inc. v. AliphCom*, No. 16-00118, 2017 WL 3129989, at *2 (N.D. Cal. July 24, 2017). Nor must a court afford weight to prosecution histories—as opposed to final written decisions in *inter partes* review proceedings—in the analysis of patent eligibility at the motion to dismiss stage. *Interactive Wearables, LLC v. Polar Electro Oy*, 501 F. Supp. 3d 162, 183 (E.D.N.Y. 2020). But even looking to the Patent Examiner's statements, they do not support the proposition for which Plaintiff cites them. Contrary to Plaintiff's suggestion, (Pla.'s Br., ECF No. 23 at 17–19), the Patent Examiner

---

[8]  Importantly, Plaintiff relies only on statements by the Patent Examiner regarding eligibility with respect to the *other* Patents-in-Suit, not the '755 Patent. (Pla.'s Br., ECF No. 23 at 17–19; Am. Compl., ECF No. 5, ¶¶ 18–21). All the same, the Court considers this argument despite cabining its eligibility analysis to Claim 2 of the '755 Patent, given its representativeness. *See supra* Section IV.A.

did not consider the Patents' eligibility under *Alice*; rather, he refers to *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010). (Exh. 5, ECF No. 24-1, at PDF p.9). That case predates *Alice* and "applied a different test for patentability under Section 101." *RDPA, LLC v. Geopath, Inc.*, 543 F. Supp. 3d 4, 24 n.4 (S.D.N.Y. 2021). Thus, even if the Court were to defer to the Patent Examiner's determination, it would have no bearing on the *Alice* analysis. Accordingly, Plaintiff's argument fails.

Lacking "an 'inventive concept' sufficient to transform [the] abstract idea into a patent-eligible application," Claim 2 fails at *Alice* Step 2 as well. *Vroom*, 2022 WL 2314892, at *10.

*****

In sum, the Court finds that Claim 2 of the '755 Patent is (1) directed toward an abstract idea, and (2) its elements do not contain an "inventive concept" sufficient to "transform" that claimed abstract idea into a patent-eligible application. *Alice*, 573 U.S. at 222 (quoting *Mayo*, 566 U.S. at 72–73, 79). Accordingly, it—and the related claims of the Patents-in-Suit—are patent-ineligible under 35 U.S.C. § 101, and Plaintiff's patent infringement claims cannot survive. *Open Parking*, 2016 WL 3547957, at *2.[9]

---

[9] Because the Court finds that none of the asserted claims in the Patents-in-Suit are patent-eligible, Defendant could not have infringed them—willfully or otherwise. But even if the relevant claims of the Patents-in-Suit were patent-ineligible, Plaintiff's willfulness allegations would remain insufficient because they are admittedly premised on the notice provided by service of the Complaint alone. (Pla.'s Br., ECF No. 23 at 25; Am. Compl., ECF No. 5, ¶¶ 76, 78). Although it appears that this question has not been authoritatively settled in this Circuit, the Court finds persuasive the reasoning of the U.S. District Court of the District of Delaware in *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249–52 (D. Del. 2021), that allegations such as these fail to state a claim for willful infringement under 35 U.S.C. § 284.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. (ECF No. 9).

An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**